## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | |
| BWGS, LLC, | ) | Case No. 19–01487–JMC–7A |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| JOHN J. PETR, Trustee for BWGS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Pro. No. |
| | ) | |
| vs. | ) | ADVERSARY COMPLAINT |
| | ) | |
| KIRKLAND & ELLIS LLP, | ) | |
| | ) | |
| Defendant. | ) | |

## **COMPLAINT**

Plaintiff, John J. Petr, in his capacity as the Chapter 7 Trustee (the "Trustee") for the Debtor, BWGS, LLC formerly known as Worm's Way, Inc. ("Debtor"), by counsel, for his Complaint against Kirkland & Ellis LLP ("Kirkland"), states as follows:

### PARTIES

1. On March 13, 2019, three creditors of the Debtor filed in this Court against the Debtor an involuntary petition for relief under Chapter 7 of the Bankruptcy Code, thus initiating a bankruptcy case against the Debtor (the "Bankruptcy Case").

2. On April 24, 2019, the Order for Relief in an Involuntary Case and Order to Complete Filing was entered and the Trustee was appointed as the Chapter 7 Trustee in the Bankruptcy Case.

3. Kirkland is an Illinois limited liability partnership with its principal place of business at 300 North LaSalle, Chicago, IL 60654.

4. The Debtor is a Delaware limited liability company with its principal place of business at 7854 North State Road 37, Bloomington, IN 47404.

5. BWGS Intermediate Holding, LLC ("BWGS Intermediate"), a Delaware limited liability company, is the parent company of the Debtor and has a principal place of business address of 1410 Hancel Parkway, Mooresville, IN 46158.

6. BWGS Holding, LLC ("BWGS Holding"), a Delaware limited liability company, is the parent company of BWGS Intermediate and has a principal place of business address of 1410 Hancel Parkway, Mooresville, IN 46158.

## JURISDICTION AND VENUE

7. This adversary proceeding was commenced pursuant to applicable law, including 11 U.S.C. §§ 323, 327, 544, 547, 548, 549, and 550; the Indiana Uniform Fraudulent Transfer Act (Ind. Code § 32–18–2–1, *et seq.*); and Fed. R. Bankr. P. 7001.

8. The Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.

9. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).

10. Venue for this action is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

11. The Trustee consents to the entry of final orders or judgments by the Court.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

12. This adversary proceeding arises under and relates to *In re BWGS, LLC*, Chapter 7 Bankruptcy, Case No. 19–01487–JMC–7A, pending in the United States Bankruptcy Court for the Southern District of Indiana, Indianapolis Division.

13. As of December 2016, the Debtor was an Indiana corporation named Worm's Way, Inc. that was engaged in the wholesale distribution of hydroponic and organic products from warehouses located in Indiana, California, Colorado, Oregon, and North Carolina.

14. In 2016, Sun Capital Partners ("Sun Capital") and the trustee of the Debtor's ESOP trust engaged in negotiations that resulted in an agreement under which Sun Capital would create an acquisition vehicle to acquire all of the outstanding stock in the Debtor from the trust.

15. On December 15, 2016, Sun Capital formed BWGS Intermediate, a subsidiary of BWGS Holding, to serve as the acquisition vehicle.

16. Upon information and belief, Kirkland represented Sun Capital, BWGS Holding, and/or BWGS Intermediate in the acquisition of the Debtor. *See* **Exhibit 1**, Closing Funds Flow.

17. On or about December 30, 2016, the acquisition closed and BWGS Intermediate purchased the stock in the Debtor from the ESOP trust and became the Debtor's parent company.

18. Kirkland received approximately $944,003.37 in fees in connection with BWGS Intermediate's acquisition of the Debtor. *See* **Exhibit 1**, Closing Funds Flow.

19. Upon information and belief, the consideration due to the ESOP trust for the stock in the Debtor was approximately $37.75 million (the "Purchase Price").

20. To fund a portion of the Purchase Price, BWGS Intermediate obtained a bridge loan from BMO Harris Bank N.A. ("BMO") in the amount of $25.8 million (the "Bridge Loan").

21. BMO disbursed the $25.8 million proceeds of the Bridge Loan directly to the ESOP Trust, and BWGS Intermediate executed and delivered to BMO a demand note in the stated principal amount of $25.8 million (the "Bridge Loan Note"), evidencing BWGS Intermediate's obligation to repay the Bridge Loan.

22. The Debtor was not a co-maker on the Bridge Loan Note, nor was it a party to the Loan Authorization Agreement.

23. The Debtor did not guarantee the indebtedness evidenced by the Bridge Loan Note, encumber its assets to secure that indebtedness, or otherwise become an obligor on that indebtedness.

24. On January 19, 2017, the new owners converted the Debtor to a Delaware limited liability company named BWGS, LLC.

25. After converting the Debtor to a Delaware limited liability company, those in control of the Debtor caused it to enter into two credit facilities to obtain funds to pay off BWGS Intermediate's indebtedness under the Bridge Loan, indebtedness on which the Debtor was not obligated.

26. On January 27, 2017, the Debtor was caused to enter into, as a co-borrower with BWGS Intermediate, a $20 million term loan with a group of term lenders and $5 million of advances under a secured revolving loan credit agreement with an asset-based lender (the "January 2017 Loans").

27. To obtain funding under the January 2017 Loans, those in control of the Debtor required the Debtor to substantially encumber all of its assets as security for repayment.

28. The proceeds of the January 2017 Loans were used to pay off BWGS Intermediate's indebtedness under the Bridge Loan and a large portion of the fees and expenses incurred in connection with the January 2017 Loans.

29. As a result of the January 2017 Loans, the Debtor was left with insufficient capital to operate and was rendered insolvent in January 2017.

30. While the Debtor limped along for roughly two years, the Debtor was never able to overcome the January 2017 Loans, and its slide into inevitable bankruptcy came to a conclusion with the filing of the involuntary petition on March 13, 2019.

31. After the Debtor was rendered insolvent and left with insufficient capital to operate in January 2017, the Debtor paid Kirkland for legal services provided to BWGS Holding, an upstream second-tier parent of the Debtor, from February 2017 to September 2019.

32. As a result of payments made by the Debtor to Kirkland after January 2017, the Trustee's counsel issued a subpoena to Kirkland for the production of all invoices and time records related to Kirkland's work for any BWGS entity. *See* **Exhibit 2**, Trustee's Subpoena and Request for Production to Kirkland.

33. In response to the Subpoena, Kirkland only produced six invoices and a ledger statement created by the Debtor to track invoices and its own payments.

34. On January 28, 2021, the Trustee's counsel requested further supplementation from Kirkland of its invoices and time records for work performed for any BWGS entity and the engagement letters between Kirkland and the Debtor. *See* **Exhibit 3**, Trustee's Letter to Kirkland for Supplementation.

35. On March 17, 2021, Kirkland admitted in its response letter that it billed BWGS Holding for $863,281.71 under seventeen separate invoices and that the Debtor paid for the legal services rendered for BWGS Holding. *See* **Exhibit 4**, Kirkland's Response Letter to Trustee's Request for Supplementation.

36. Kirkland did not attach the seventeen invoices billed to BWGS Holding or the engagement letters referenced in its response letter. *See* **Exhibit 4**, Kirkland's Response Letter to Trustee's Request for Supplementation.

5

37. Kirkland admits that its legal services for BWGS Holding were paid for by the Debtor. *See* **Exhibit 4**, Kirkland's Response Letter to Trustee's Request for Supplementation.

38. The six invoices produced by Kirkland also confirm that the Debtor paid for legal services provided by Kirkland to BWGS Holding. *See* **Exhibit 5**, Kirkland's Invoices.

39. The Debtor's ledger reveals that the Debtor paid over $601,575.96 to Kirkland for legal services provided to BWGS Holding from May 2017 to January 2019. *See* **Exhibit 6**, Debtor's Ledger.

40. Moreover, while not evidenced by the ledger or the six invoices produced by Kirkland, the Debtor paid $30,000 to Kirkland for legal services rendered to BWGS Holding within ninety (90) days of the filing of the involuntary petition on March 13, 2019. *See* **Exhibit 7**, Kirkland's Response to Trustee's Request for Return of Preference Payments.

41. On March 26, 2021, the Trustee's counsel made a final request to Kirkland to provide evidence of its services for BWGS Holding and an accounting of invoices and payments made by the Debtor to Kirkland. *See* **Exhibit 8**, Trustee's Final Request.

42. Kirkland failed to respond to the Trustee's Final Request for Supplementation.

43. The total amount of payments made by the Debtor to Kirkland for legal services provided to BWGS Holding is at least $863,281.71.

44. Upon information and belief, the Debtor made additional payments to Kirkland for legal services provided to BWGS Holding for which Kirkland did not tender invoices to the Debtor for the amounts of such payments.

6

**COUNT I: AVOIDANCE AND RECOVERY OF
KIRKLAND PAYMENTS AS FRAUDULENT TRANSFERS
PURSUANT TO 11 U.S.C. § 544 AND IND. CODE §§ 32–18–2–14 AND 32–18–2–15**

45. The Trustee incorporates by reference Paragraphs 1 through 44 of this Complaint as if fully set forth herein.

46. Pursuant to 11 U.S.C. § 544(b), the Trustee may avoid any transfer of an interest of the Debtor in property or any obligation incurred by the Debtor that is voidable under applicable law by a creditor holding an unsecured claim.

47. From February 2017 through September 2019, Kirkland received several transfers of value, including, but not limited to, payments of at least $863,281.71 from the Debtor for legal services rendered for BWGS Holding (the "Kirkland Payments"). *See* **Exhibit 4**, Kirkland's Response Letter to Trustee's Request for Supplementation.

48. The Debtor did not receive value from the legal services that Kirkland rendered for BWGS Holding in exchange for the Kirkland Payments.

49. The Kirkland Payments were for the benefit of BWGS Holding and not the Debtor.

50. The Debtor was not reimbursed by BWGS Intermediate or BWGS Holding for the Kirkland Payments.

51. The Kirkland Payments (from February 2017 to September 2019) were made after the January 2017 Loans that had rendered the Debtor insolvent and/or with insufficient capital to operate in January 2017.

52. The Kirkland Payments were made while the Debtor was insolvent and/or with insufficient capital to sustain its operations.

7

53. In violation of the Indiana Uniform Fraudulent Transfer Act, specifically Ind. Code § 32–18–2–14(a)(2)(b), the Debtor did not receive reasonably equivalent value in exchange for the Kirkland Payments and the Debtor intended to incur or believed or reasonably should have believed that it would incur debts beyond its ability to pay as the debts became due.

54. In violation of the Indiana Uniform Fraudulent Transfer Act, specifically Ind. Code § 32–18–2–15, the Debtor did not receive reasonably equivalent value in exchange for the Kirkland Payments and the Debtor was insolvent at the time of the Kirkland Payments.

55. In accordance with 11 U.S.C. § 544, Ind. Code § 32–18–2–14, Ind. Code § 32–18–2–15, and Ind. Code § 32–18–2–17, the Trustee may avoid and recover the value of the Kirkland Payments from Kirkland for the benefit of the bankruptcy estate.

56. The total amount of the Kirkland Payments is to be determined at trial due to Kirkland's noncompliance with the Trustee's subpoena to produce an accounting of invoices and payments made by the Debtor to Kirkland. *See* **Exhibit 8**, Trustee's Final Request.

WHEREFORE, the Trustee respectfully requests that the Court enter judgment in favor of the Trustee and against Kirkland on Count I as follows:

A. Avoiding the Kirkland Payments;

B. Preserving the avoided Kirkland Payments for the benefit of the Estate;

C. Ordering Kirkland to pay to the Trustee the Kirkland Payments in an amount to be determined at trial; and

D. Granting the Trustee all other just and proper relief.

## COUNT II: AVOIDANCE AND RECOVERY OF TWO-YEAR WINDOW PAYMENTS AS FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. § 548

57. The Trustee incorporates by reference Paragraphs 1 through 56 of this Complaint as if fully set forth herein.

58.     By virtue of its post-acquisition role as legal counsel for the parent companies of the Debtor (Sun Capital, BWGS Holding, and/or BWGS Intermediate), Kirkland utilized its close relationship with the Debtor and its access to inside information on the Debtor to enter into transactions with the Debtor for legal services that were not at arms-length and that only provided benefits to BWGS Holding and not to the Debtor.

59.     Kirkland is an insider of the Debtor within the meaning of 11 U.S.C. § 101(31).

60.     From February 2017 through September 2019, the Debtor made the Kirkland Payments (at least $863,281.71) to Kirkland for legal services rendered for BWGS Holding. *See* **Exhibit 4**, Kirkland's Response Letter to Trustee's Request for Supplementation.

61.     The Debtor's ledger reveals that at least $601,575.96 of the Kirkland Payments was paid within two (2) years of the petition date of March 13, 2019 (the "Two-Year Window Payments"). *See* **Exhibit 6**, Debtor's Ledger.

62.     The Debtor did not receive value from the legal services that Kirkland rendered for BWGS Holding in exchange for the Two-Year Window Payments.

63.     The Two-Year Window Payments were for the benefit of BWGS Holding and not the Debtor.

64.     The Debtor was not reimbursed by BWGS Intermediate or BWGS Holding for the Two-Year Window Payments.

65.     The Two-Year Window Payments were made to Kirkland without the Debtor receiving a reasonably equivalent value.

66.     The Two-Year Window Payments were made after the January 2017 Loans that had rendered the Debtor insolvent in January 2017.

67.     The Two-Year Window Payments were made while the Debtor was insolvent.

9

68. As a result of the Two-Year Window Payments, the Debtor intended to incur or believed or reasonably should have believed that it would incur debts beyond its ability to pay.

69. The Debtor made the Two-Year Window Payments to and for the benefit of Kirkland, an insider of the Debtor.

70. Pursuant to 11 U.S.C. § 548, the Trustee may avoid and recover the value of the Two-Year Window Payments from Kirkland for the benefit of the bankruptcy estate.

71. The total amount of the Two-Year Window Payments is to be determined at trial due to Kirkland's noncompliance with the Trustee's subpoena to produce an accounting of invoices and payments made by the Debtor to Kirkland. *See* **Exhibit 8**, Trustee's Final Request.

WHEREFORE, the Trustee respectfully requests that the Court enter judgment in favor of the Trustee and against Kirkland on Count II as follows:

A. Avoiding the Two-Year Window Payments;

B. Preserving the avoided Two-Year Window Payments for the benefit of the Estate;

C. Ordering Kirkland to pay to the Trustee the Two-Year Window Payments in an amount to be determined at trial; and

D. Granting the Trustee all other just and proper relief.

### COUNT III: AVOIDANCE AND RECOVERY OF POST-PETITION PAYMENTS TO KIRKLAND PURSUANT TO 11 § U.S.C. 549

72. The Trustee incorporates by reference Paragraphs 1 through 71 of this Complaint as if fully set forth herein.

73. On March 13, 2019, three creditors of the Debtor filed an involuntary petition for relief under Chapter 7 of the Bankruptcy Code against the Debtor.

10

74. After the involuntary petition was filed on March 13, 2019, the Debtor continued to make payments to Kirkland for legal services rendered to BWGS Holding. *See* **Exhibit 4**, Kirkland's Response Letter to Trustee's Request for Supplementation.

75. Kirkland admits that it received post-petition payments from the Debtor from March 2019 to September 2019 (the "Post-Petition Payments"). *See* **Exhibit 4**, Kirkland's Response Letter to Trustee's Request for Supplementation.

76. From March 2019 to September 2019, the Debtor made the Post-Petition Payments to Kirkland for legal services provided to BWGS Holding.

77. The Debtor did not receive equivalent value from the legal services that Kirkland rendered for BWGS Holding in exchange for the Post-Petition Payments.

78. The Post-Petition Payments were for the benefit of BWGS Holding and not the Debtor.

79. The Debtor was not reimbursed by BWGS Intermediate or BWGS Holding for the Post-Petition Payments.

80. Pursuant to 11 U.S.C. § 549, the Trustee is entitled to avoid the Post-Petition Payments made by the Debtor to Kirkland as those payments were neither authorized by this Court nor by the Bankruptcy Code.

81. The total amount of the Post-Petition Payments is to be determined at trial due to Kirkland's noncompliance with the Trustee's subpoena to produce an accounting of invoices and payments made by the Debtor to Kirkland. *See* **Exhibit 8**, Trustee's Final Request.

WHEREFORE, the Trustee respectfully requests that the Court enter judgment in favor of the Trustee and against Kirkland on Count III as follows:

A. Avoiding the Post-Petition Payments;

B.      Preserving the avoided Post-Petition Payments for the benefit of the Estate;

C.      Ordering Kirkland to pay to the Trustee the Post-Petition Payments in an amount to be determined at trial; and

D.      Granting the Trustee all other just and proper relief.

### COUNT IV: AVOIDANCE AND RECOVERY OF KIRKLAND PREFERENCE TRANSFERS PURSUANT TO 11 U.S.C. § 547

82.      The Trustee incorporates by reference Paragraphs 1 through 81 of this Complaint as if fully set forth herein.

83.      In connection with BWGS Intermediate's acquisition of the Debtor, Kirkland received almost a million dollars for legal counsel and diligence rendered for Sun Capital, BWGS Holding, and/or BWGS Intermediate. *See* **Exhibit 1**, Closing Funds Flow.

84.      Upon information and belief, Sun Capital, BWGS Holding, and/or BWGS Intermediate utilized Kirkland's legal services after the acquisition to cause the Debtor to enter into the January 2017 Loans that rendered the Debtor insolvent and with insufficient capital to sustain its operations.

85.      By virtue of its post-acquisition role as legal counsel for Sun Capital, BWGS Holding, and/or BWGS Intermediate, Kirkland had access to inside information to effectively control and influence the Debtor's operations, corporate policy, and assets to cause the Debtor to make payments for legal services that provided a benefit to BWGS Holding and not to the Debtor.

86.      Kirkland is a statutory insider of the Debtor within the meaning of 11 U.S.C. § 101(31)(B).

87.      By virtue of its post-acquisition role as legal counsel for the parent companies of the Debtor (Sun Capital, BWGS Holding, and/or BWGS Intermediate), Kirkland utilized its

12

close relationship with the Debtor and its access to inside information on the Debtor to enter into transactions with the Debtor for legal services that were not at arms-length and that only provided benefits to BWGS Holding and not to the Debtor.

88. The transactions between Kirkland and the Debtor for legal services rendered for BWGS Holding were not at arms-length because no party acting in their best interest would enter into a transaction for services in which it received no value.

89. As a result of its close relationship with the Debtor and the transactions with the Debtor for legal services rendered to BWGS Holding that were negotiated at less than arm's length, Kirkland is a non-statutory insider within the scope of 11 U.S.C. § 101(31).

90. Kirkland received several transfers of value, including, but not limited to, payments of at least $410,500 from the Debtor for legal services rendered for BWGS Holding in the one (1) year prior to the filing of the involuntary petition on March 13, 2019 (the "One-Year Window Transfers"). *See* **Exhibit 6**, Debtor's Ledger.

91. Moreover, the Debtor paid $30,000 to Kirkland for legal services rendered to BWGS Holding within ninety (90) days of the filing of the involuntary petition on March 13, 2019 (the "90-Day Window Transfers"). *See* **Exhibit 7**, Kirkland's Response to Trustee's Request for Return of Preference Payments.

92. The One-Year Window Transfers and the 90-Day Window Transfers (collectively, the "Kirkland Preference Transfers") were made at a time when Kirkland was a creditor of the Debtor within the meaning of 11 U.S.C. § 101(10).

93. The Kirkland Preference Transfers were made on account of an antecedent debt owed by the Debtor before the transfers were made.

94. The Kirkland Preference Transfers (from March 2018 to March 2019) were made after the January 2017 Loans that had rendered the Debtor insolvent and/or with insufficient capital to operate in January 2017.

95. The Kirkland Preference Transfers were made while the Debtor was insolvent and/or with insufficient capital to operate.

96. The Kirkland Preference Transfers enabled Kirkland to receive more than it would receive: (1) under a Chapter 7 Bankruptcy petition; (2) if the transfers had not been made; and (3) if Kirkland received payment of such debt to the extent provided by the provisions of Title 11 of the United States Code.

97. Pursuant to 11 U.S.C. § 547, the Kirkland Preference Transfers constitute avoidable preferences, and the Trustee is entitled to a judgment against Kirkland to avoid the Kirkland Preference Transfers.

98. The total amount of the Kirkland Preference Transfers is to be determined at trial due to Kirkland's noncompliance with the Trustee's subpoena to produce an accounting of invoices and payments made by the Debtor to Kirkland. *See* **Exhibit 8**, Trustee's Final Request.

WHEREFORE, the Trustee respectfully requests that the Court enter judgment in favor of the Trustee and against Kirkland on Count IV as follows:

A. Declaring that the Kirkland Preference Transfers are avoidable preferences pursuant to 11 U.S.C. § 547;

B. Ordering Kirkland to pay to the Trustee the Kirkland Preference Transfers in an amount to be determined at trial; and

C. Granting the Trustee all other just and proper relief.

## COUNT V: RECOVERY OF AVOIDED TRANSFERS AND PAYMENTS PURSUANT TO 11 U.S.C. § 550 AND IND. CODE § 32–18–2–17

99. The Trustee incorporates by reference Paragraphs 1 through 98 of this Complaint as if fully set forth herein.

100. To the extent any of the above-mentioned Kirkland Payments, Two-Year Window Payments, Post-Petition Payments, and/or Kirkland Preference Transfers, ("Kirkland Payments and Transfers") are avoided pursuant to 11 U.S.C. §§ 544, 547, 548, or 549, Ind. Code § 32–18–2–14, and/or Ind. Code § 32–18–2–15, the Trustee may recover the value of the Kirkland Payments and Transfers under 11 U.S.C. § 550 and Ind. Code § 32–18–2–17 from the initial transferee of such avoided transfers or payments, all immediate or mediate transferees of such initial transferee, and all entities for whose benefit each such avoided transfer or payment was made.

101. To the extent any of the Kirkland Payments and Transfers are avoided pursuant to 11 U.S.C. §§ 544, 547, 548, or 549, Ind. Code § 32–18–2–14, and/or Ind. Code § 32–18–2–15, such payments and transfers are preserved for the benefit of the Estate.

WHEREFORE, the Trustee respectfully requests that the Court enter judgment in favor of the Trustee and against Kirkland on Count V as follows:

A. Avoiding the Kirkland Payments, Two-Year Window Payments, Post-Petition Payments, and Kirkland Preference Transfers;

B. Preserving the avoided Kirkland Payments, Two-Year Window Payments, Post-Petition Payments, and Kirkland Preference Transfers for the benefit of the Estate;

C. Ordering Kirkland to pay to the Trustee the Kirkland Payments, Two-Year Window Payments, Post-Petition Payments, and Kirkland Preference Transfers in an amount to be determined at trial; and

D.      Granting the Trustee all other just and proper relief.

## COUNT VI: ACCOUNTING

102.    The Trustee incorporates by reference Paragraphs 1 through 101 of this Complaint as if fully set forth herein.

103.    The Trustee's counsel issued a subpoena to Kirkland on or about May 18, 2020 for the production of all invoices and time records related to Kirkland's work for any BWGS entity. *See* **Exhibit 2**, Trustee's Subpoena and Request for Production to Kirkland.

104.    Kirkland only produced six invoices and a ledger statement created by the Debtor to track invoices and its own payments.

105.    On January 28, 2021, the Trustee's counsel requested further supplementation from Kirkland of its invoices and time records for work performed for any BWGS entity and the engagement letters between Kirkland and the Debtor. *See* **Exhibit 3**, Trustee's Letter to Kirkland for Supplementation.

106.    On March 17, 2021, Kirkland admitted in its response letter that it billed BWGS Holding for $863,281.71 under seventeen separate invoices and that the Debtor paid for the legal services rendered for BWGS Holding. *See* **Exhibit 4**, Kirkland's Response Letter to Trustee's Request for Supplementation.

107.    Kirkland did not attach the seventeen invoices billed to BWGS Holding or the engagement letters referenced in its response letter. *See* **Exhibit 4**, Kirkland's Response Letter to Trustee's Request for Supplementation.

108.    On March 26, 2021, the Trustee's counsel made a final request to Kirkland to provide evidence of its services for BWGS Holding and an accounting of invoices and payments made by the Debtor to Kirkland. *See* **Exhibit 8**, Trustee's Final Request.

109. Kirkland failed to respond to the Trustee's Final Request for Supplementation.

WHEREFORE, the Trustee respectfully requests that the Court enter an Order requiring Kirkland to provide an accounting of Kirkland's invoices, the services rendered by Kirkland, and payments made by the Debtor to Kirkland.

Respectfully Submitted,

RUBIN & LEVIN, P.C.

Dated: April 14, 2021

*/s/ James T. Young*
James T. Young, No. 13834-71
John C. Hoard, No. 8024-49
Seth A. Raebel, No. 35340–53
135 N. Pennsylvania Street, Suite 1400
Indianapolis, IN 46204
Tel: (317) 634-0300
Fax: (317) 263-9411
Email: james@rubin-levin.net
Email: johnh@rubin-levin.net
Email: sraebel@rubin-levin.net

*Counsel for John J. Petr, Trustee*

G:\WP80\TRUSTEE\Petr\Kirkland & Ellis - 86175102\Drafts\File Complaint with These Exhibits First\Complaint.docx